UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAY MOUNT,

        Plaintiff,

v.                                    Case No: 6:22-cv-2051-PGB-EJK

AMERICA'S INSURED, LLC,
CHRISTOPHER ALLENGER
and KENNETH PARSONS,

        Defendants.
_____/

## ORDER

    This cause comes before the Court on the following:

1. Plaintiff Ray Mount's (the "**Counter-Defendant**") Motion to Strike Defendants America's Insured LLC ("**Counter-Plaintiff AI LLC**")) and Christopher Allenger's ("**Counter-Plaintiff Allenger**") Affirmative Defenses (Doc. 32 (the "**First Motion to Strike**")) and Counter-Plaintiffs AI LLC and Allenger's response (Doc. 43);

2. The Counter-Defendant's Motion to Dismiss Counter-Plaintiffs AI LLC and Allenger's Counterclaims (Doc. 33 (the "**First Motion to Dismiss**")) and the Counter-Plaintiffs' response (Doc. 50);

3. The Counter-Defendant's Motion to Strike Defendant Kenneth Parson's ("**Counter-Plaintiff Parsons**") Affirmative Defenses

(Doc. 55 (the "**Second Motion to Strike**")) and Counter-Plaintiff Parson's response (Doc. 57); and

4. The Counter-Defendant's Motion to Dismiss Counter-Plaintiff Parsons Counterclaims (Doc. 54 (the "**Second Motion to Dismiss**")) and Counter-Plaintiff Parson's response (Doc. 56).

Upon due consideration, all four motions are granted in part and denied in part.

**I.   BACKGROUND**

This case stems from business relationships gone sour and an ensuing trademark dispute regarding the "America's Insured" trademark (the "**Contested Mark**"). (Docs. 1, 23, 47). Counter-Defendant registered the Contested Mark with the United States Patent and Trademark Office with U.S. Trademark Registration No. 6,759, 316 on June 14, 2022. (Doc. 1, ¶¶ 1, 2). However, the Counter-Defendant alleges the Contested Mark was first in use in connection with the sale of insurance agency and brokerage services dating back to at least January of 2000. (*Id.* ¶¶ 2, 11–12). Nevertheless, the Counter-Defendant alleges that since around June 1, 2020, the Counter-Plaintiffs have engaged in a pattern of behavior aimed at capitalizing on the Contested Mark's reputation, good will, and its associated customer base by misleading customers into purchasing their identical and competing insurance services. (*Id.* ¶ 3).

More specifically, this allegedly illegal behavior arose due to the fallout from the sale on June 1, 2020 of America's Insured, LLC (herein referred to as Counter-

Plaintiff AI, LLC), an entity created in 2018 by non-party Brent Argusa ("**Non-Party Argusa**") allegedly at the behest of Counter-Defendant. (*Id.* ¶¶ 16, 18–21). At the time of the entity's creation, Counter-Defendant allegedly agreed to revocably license the Contested Mark and its related design to Counter-Plaintiff AI LLC. (*Id.* ¶¶ 16, 22–24). After Non-Party Argusa stepped away as managing member of Counter-Plaintiff AI LLC in April of 2020, Counter-Defendant began discussions with Counter-Plaintiffs Parsons and Allenger to take on this role. (*Id.* ¶¶ 25–27). Non-Party Argusa then orally agreed to transfer controlling ownership stakes in Counter-Plaintiff AI LLC on June 1, 2020. (*Id.* ¶ 28). The contested terms of this transfer and the fallout from it make up the bulk of this dispute: Counter-Defendant alleges he was supposed to at some point receive a controlling interest in the entity after the initial transfer while Counter-Plaintiffs Allenger and Parsons aver this was never their understanding. (*Compare* Doc 1 *with* Doc. 23 *and* Doc. 47). Put simply, in Counter-Defendant's view Counter-Plaintiffs did not live to their end of the bargain and thus improperly began to utilize the Contested Mark, even after Counter-Defendant revoked the oral license for its use by Counter-Plaintiff AI LLC. (*Id.* ¶¶ 28–50).

In order to remedy these alleged wrongs, the Counter-Defendant filed the initial Complaint alleging the following claims: unfair competition (Count I), trademark infringement (Count II), false designation of origin (Count III), trademark counterfeiting (Count IV), and cybersquatting (Count V). (*Id.* ¶¶ 51–99). The Counter-Plaintiffs answered, asserted forty affirmative defenses, and

3

brought three counterclaims: non-infringement (Count I), trademark invalidity (Count II), and trademark cancellation (Count III). (Docs. 23, 47).[1] Therein, Counter-Plaintiffs allege it was never their understanding that Counter-Defendant ever held any ownership interest in either Counter-Defendant AI LLC or in the Contested Mark or that they would be required to transfer any such related interests after the June 1, 2020 sale. (Doc. 23, ¶¶ 103–06; Doc. 47, ¶¶ 103–06).

The Counter-Defendant now moves to strike the affirmative defenses and dismiss the three counterclaims. (Docs. 32, 33, 54, 55). After the Counter-Plaintiffs' responses in opposition (Docs. 43, 50, 56, 57), this matter is ripe for review.

## II.   STANDARD OF REVIEW

### A.   Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Affirmative defenses generally are subject to Federal Rule of Civil Procedure 8, which demands a "short and plain" statement of those defenses. Although the Court has broad discretion in ruling on motions to strike, the Court may only strike an affirmative defense when it is "insufficient as a matter of law." *Microsoft Corp. v. Jesse's Computs. & Repair, Inc.*, 211 F.R.D. 681, 683–84 (M.D. Fla. 2002) (quoting *Anchor Hocking Corp. v. Jacksonville Elec. Auth.*,

---

[1] Although Counter-Plaintiffs AI LLC and Allenger and Counter-Plaintiff Parsons answered and counterclaimed separately, both answer-counterclaims are identical in almost every respect beyond varied stylizations of the relevant parties. (*Compare* Doc. 23 *with* Doc. 47).

4

419 F. Supp. 992, 1000 (M.D. Fla. 1976)); *see also Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 779 (11th Cir. 1982) (affirming the striking of a defendant's affirmative defense as it was "legally insufficient"). Moreover, "[w]hile an answer need not include a detailed statement of the applicable defenses, a defendant must do more than make conclusory allegations. If the affirmative defense comprises no more than bare bones conclusory allegations, it must be stricken." *Microsoft*, 211 F.R.D. at 684 (internal quotations and citations omitted).

Generally, motions to strike affirmative defenses are disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). However, where a defense "might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action . . . [it] should be deleted." *Id.*; *see also Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995). Nevertheless, in most situations when striking an affirmative defense, courts provide leave for defendants to replead unless doing so would be futile or unnecessary. *See e.g.*, *Romero v. Southern Waste Sys. LLC*, 629 F. Supp. 2d 1356 (S.D. Fla. 2009).

**B.     Motion to Dismiss for Failure to State a Claim**

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *United States v. Zak*, 550 F. Supp. 3d 1349 (N.D. Ga. 2021) (quoting

5

*Great Am. Assurance Co. v. Sanchuk, LLC*, No. 8:10-cv-2568, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint or counterclaim in the light most favorable to the plaintiff or counter-plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff or counter-plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff (or counter-plaintiff). *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

At the outset, the Court observes that most of this suit boils down to a factual dispute over who possesses proper rights in the Contested Mark and the terms of the June 2020 sale of Counter-Defendant AI LLC. Such factual disputes are not

properly resolved at this procedural juncture. Relatedly, however, many of the Counter-Plaintiffs' affirmative defenses and counterclaims amount to factual denials of the initial claims. These too are improper. As such, the Court first clarifies why the bulk of Defendants' affirmative defenses will be stricken and then explains why Counts I and II of the Counterclaims are due for dismissal.

### A.  Motions to Strike

Counter-Plaintiffs affirmative defenses fall into three buckets: (1) attempts to factually negate necessary elements of Counter-Defendants' prima case in its initial claims for relief; (2) affirmative defenses that might be proper yet are pled too vaguely for the Court to determine their propriety; and (3) legitimate affirmative defenses the merits of which will be borne out through the litigation process. The Court ordinarily hesitates to grant such requests to strike as many counter-pleadings often are replete with similar boilerplate defenses as those contained herein, but in light of the particularly flagrant violations herein, the Court departs from its normal practice.

First, Counter-Plaintiff must do more than allege a failure to state a claim or point out defects in Counter-Defendant's initial prima facie case because such general defenses do not constitute proper affirmative defenses. *Pk Studios, Inc. v. R.L.R. Invs., LLC*, No. 2:15-cv-389, 2016 WL 4529323, at *2 (M.D. Fla. Aug. 30, 2016) (citing *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 n.9 (11th Cir. 1988)). Consequently, the Court will strike the following affirmative defenses: the

First,[2] Third, Sixth, Seventh, Eighth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth through Twenty-Fourth,[3] Twenty-Fifth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, and Thirty-Third Affirmative Defenses as they simply deny one or more necessary elements of Counter-Defendant's initial five claims and thus are improper. (Docs. 23, 47). Of course, while the Court takes no position on whether such defenses will be successful, Counter-Plaintiffs are welcome to bring them at the proper procedural time through the proper procedural vehicle.

Second, Counter-Plaintiffs must replead the following affirmative defenses with more specific factual allegations or legal elaboration because they are either too vague or conclusory to properly put Counter-Defendant on notice of the

---

[2] The Court recognizes that the factual allegations in the First Affirmative Defense comprise the factual desideratum from which the Counter-Defendants' other affirmative defenses and the plausible counterclaim arise. As such, these general factual allegations ought to be included, just not as a separate affirmative defense. That said, paragraphs 111 and 112 are both improper general denials. (Doc. 23 ¶¶ 111–12 ("The allegations in MOUNT's Complaint are pure fiction and have been fabricated by MOUNT in an attempt to leverage [the Counter-Plaintiffs] and to thwart fair competition. Each count of the MOUNT's Complaint fails to state a cause of action against [the Counter-Plaintiffs]."); Doc. 47, ¶¶ 111–12 (identical)). Likewise, the Counter-Plaintiffs may include other factual allegations in the other affirmative defenses which the Court strikes in the general factual allegations which they deem necessary for their surviving counterclaim.

[3] These five "affirmative defenses" contain a grab bag of defenses with respect to each of the initial claims. Most are improper general defenses, but some are proper affirmative defenses (e.g., trademark is generic) yet are redundant with previous affirmative defenses which the Court allows to survive. The Counter-Plaintiffs should instead identify the claims to which those defenses apply in the surviving affirmative defense rather than replead.

defense being asserted against him: the Fourth,[4] Fifth,[5] Thirty-Seventh, and Thirty-Eighth Affirmative Defenses. *Microsoft*, 211 F.R.D. at 684; (Docs. 23, 47).

Third, for the sake of clarity, the following affirmative defenses survive the Motions to Strike: Second, Ninth, Tenth,[6] Sixteenth, Thirty-First, Thirty-Second, Thirty-Fourth, Thirty-Fifth, Thirty-Sixth, Thirty-Ninth, and Fortieth Affirmative Defenses. (Docs. 23, 47). While many of these remaining affirmative defenses are not a Platonic exemplar of pleading, they do enough to survive in light of the disfavored nature of Counter-Defendant's requested remedy. The Counter-Plaintiffs should nevertheless identify precisely which of the claims to which they allegedly apply; if they apply to multiple claims, all of these applicable claims should be identified. *See Byrne v. Nezhhat*, 261 F.3d 1075, 1129–31 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (criticizing "shotgun" pleading of affirmative defenses that do not specify the claim to which the defense is directed).

---

[4] Counter-Plaintiffs must detail which form of estoppel they are asserting as an affirmative defense. (Docs. 23, ¶ 119; Doc. 47, ¶ 119). Alleging estoppel alone is too vague to give Counter-Defendants notice of the affirmative defense being asserted, and some forms of estoppel are not valid affirmative defenses.

[5] Failure for lack of consideration is not an affirmative defense; it is a defense asserting a defect in Counter-Defendant's prima facie case. (Doc. 23, ¶ 121; Doc. 47, ¶ 121). Upon repleader, this portion of the defense should not be included. Violation of the statute of frauds, however, is a valid affirmative defense, but Counter-Defendants should assert precisely which agreements are allegedly subject to this defense. *Hewitt v. Mobile Rsch. Tech., Inc.*, 285 F. App'x 694, 696 (11th Cir. 2008).

[6] Descriptive terms may not be protectible and are treated as generics. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 1183–84 (5th Cir. 1980). Assertion that trademark in question is a generic term is an affirmative defense. *Pods Enterprises, Inc. v. U-Haul Int'l, Inc.*, No. 8:12-cv-1479, 2015 WL 1097374, at *1 (M.D. Fla. Mar. 11, 2015).

### B. Motions to Dismiss

#### 1. *Declaratory Relief (Counts I & II)*

Numerous courts have used their discretion to dismiss or strike redundant counterclaims asserted under the Declaratory Judgment Act. *See e.g.*, *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant declaratory judgment is not a proper declaratory judgment and should be dismissed."); *see e.g.*, *Gratke v. Andersen Windows, Inc.*, No. 10-cv-963, 2010 WL 5439763 (D. Minn. Dec. 8, 2010), *report and recommendation adopted*, No. 10-cv-963, 2010 WL 5441940 (D. Minn. Dec. 28, 2010). Generally, courts dismiss counterclaims where "they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses." *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 12 (D.D.C. 2010); *Ortho–Tain v. Rocky Mountain Orthodontics, Inc.*, No. 05C6656, 2006 WL 3782916, at *3 (N.D. Ill. Dec. 20, 2006); *Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842, 852–53 (N.D. Ill. 1990) (noting this principle applies to counterclaims that merely "repackage" affirmative defenses); *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) (observing that the "label 'counterclaim' has no magic" and that what "is really an answer or defense to a suit does not become an independent piece of litigation because of its label."). That said, "mere exoneration from infringement does not always meet the necessities of a wrongfully accused defendant" because "in a patent or trademark infringement suit, finding the defendant innocent of infringement" does not necessarily "determine issues of,"

10

for example, "title, validity, or the scope of the [intellectual property] claims," so "[t]he Declaratory Judgment Act furnishes [the defendant] with the means of escape." *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172, 174–75 (6th Cir. 1942).

Accordingly, when deciding whether to dismiss a counterclaim as redundant, courts consider whether the counterclaim's request for declaratory judgment serves a useful purpose. *Pettrey v. Enterprise Title Agency, Inc.*, No. 1:05-cv-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006); *Ortho–Tain, Inc.*, 2006 WL 3782916, at *3. Declaratory judgment counterclaims do not serve a useful purpose when the resolution of the initial plaintiff's claim, along with any related affirmative defenses asserted by the initial defendants, would resolve the questions raised by the counterclaim. *Daily v. Federal Ins. Co.*, No. C04-3791, 2005 WL 14734, at *6 (N.D. Cal. Jan. 3, 2005). Courts following this rule of dismissal for redundancy note that "[a]lthough federal courts normally should adjudicate all claims within their discretion, in the declaratory judgment context this principle yields to consideration of practicality and wise judicial administration." *Id.*

Here, Count II of the Complaint alleges a claim for federal trademark infringement of the Contested Mark pursuant to 15 U.S.C. § 1114(1). (Doc. 1, ¶¶ 60–71). In contrast, Count I of the Counterclaims asserts a claim for declaratory judgment of non-infringement of "the alleged trademark"—that is, the Contested Mark. (Doc. 23, p. 29; Doc. 47, pp. 29–30). Because resolution of the Counter-

11

Defendant's initial infringement claim and the Counter-Plaintiffs' associated affirmative defenses and/or general defenses on the merits would necessarily resolve Count I of the Counterclaim, Count I would not serve a useful purpose and is merely duplicative and redundant of Count II of the Complaint.

Furthermore, Count II of the Counterclaims which seeks a declaratory judgment of trademark invalidity similarly fails to serve a useful purpose because it also is duplicative of Count II of the Complaint for federal trademark infringement. *See Miracle 7, Inc. v. Halo Couture, LLC*, No. 13-61643-civ, 2014 WL 11696708, at *7–8 (S.D. Fla. Jan. 17, 2014) (dismissing with prejudice declaratory judgment counterclaims asserting that (1) plaintiff lacks trademark rights in its marks, and (2) defendant did not infringe plaintiff's trademark rights because "to resolve the trademark-infringement counts of [plaintiff's] Complaint, the Court by necessity must resolve the two issues for which [defendant] seeks declaratory judgment"). Resolution of the Counter-Defendant's initial claims and the surviving affirmative defenses will also necessarily resolve the issue of whether the Contested Mark is valid.[7] Consequently, the Counter-Plaintiffs' request for declaratory judgment must be dismissed.

---

[7] The Counter-Plaintiffs argue that it is unclear at this stage of the litigation whether the Court must necessarily resolve all issues underlying their claims for declaratory judgment by resolving the initial claims and thus the Court ought to abstain from dismissing the counterclaims due to redundancy. (Doc. 50, pp. 7–10; Doc. 56, pp. 7–10). The Court disagrees because in its judgment, the resolution of the initial claims, the surviving affirmative defenses, and the remaining counterclaim will necessarily render the counterclaims seeking declaratory judgment moot due to redundancy. *See Brain Pharma, LLC v. Woodbolt Distrib., LLC*, No. 12-60141-Civ, 2012 U.S. Dist. LEXIS 191837, at *7–10 (S.D. Fla. July 20, 2012).

### 2. *Trademark Cancellation (Count III)*

In contrast, Counter-Plaintiffs trademark cancellation claims are both plausible and non-redundant, even when scrutinized under the heightened pleading standard to which they are subject.

Non-mark holders may petition to cancel a registered mark on the grounds that the registration was obtained fraudulently. 15 U.S.C. §§ 1119, 1064(3); *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 47–48 (Fed. Cir. 1986); *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord.*, 702 F.3d 1279, 1289 (11th Cir. 2012). "Fraud in procuring a service mark occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997); *Sovereign Military Hospitaller*, 702 F.3d at 1289. "The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration." *Metro Traffic*, 104 F.3d at 340 (citations and quotations removed).[8] "Purposely failing to disclose other users' rights to use the

---

[8] "The elements of fraud in trademark registration are as follows: (1) the challenged statement was a false representation regarding a material fact; (2) the person making the representation knew that the representation was false ('scienter'); (3) an intent to deceive the USPTO; (4) reasonable reliance on the misrepresentation; [and] (5) damage proximately resulting from such reliance." *Church Girls, LLC v. Rodgers*, No. 2:18-CV-14232, 2018 WL 5923436, at *2 (S.D. Fla. Nov. 13, 2018) (cleaned up and citations removed).

13

same or similar marks may qualify as a material omission justifying cancellation of a trademark." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008) (citing *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999)).

Claims of fraud in federal court are subject to the Federal Rules of Civil Procedure's heightened pleading standard under Rule 9(b) which requires that plaintiffs plead these claims "with particularity;" this means "identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). "Malice intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." FED. R. CIV. P. 9(b). This heightened pleading standard ensures a dual purpose: first, it "alert[s] defendants to the precise misconduct with which they are charged" and second, it "protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Here, Counter-Defendant argues that Counter-Plaintiffs did not plead their trademark cancellation claims with particularity. (Doc. 33, pp. 11–16; Doc. 54, pp. 11–16). The Court disagrees. First, Counter-Defendant ignores that the allegations regarding mental state may be alleged generally and are not subject to the particularity requirement. (Doc. 33, pp. 11–16; Doc. 54, pp. 11–16). Second, Counter-Defendant appears not to recognize that the fraudulent statements

14

allegedly made in the counterclaims were all made specifically with respect to the registration application for the Contested Mark with the United States Patent and Trademark Office. (Doc. 23, pp. 31–33; Doc. 47, pp. 30–32). As such, the Counter-Plaintiffs did not merely recite the necessary elements but instead sufficiently alleged the who (Counter-Defendant), the what (several false statements or omissions in the application for trademark registration, including the failure to disclose other users' rights to use the same or similar marks),[9] the when (the date of submission to the United States Patent and Trademark Office), the where (the United States Patent and Trademark Office), and how of the fraud alleged (the United States Patent and Trademark Office's reliance on the truth of the application with knowingly false or misleading statements). *Omnipol*, 32 F.4th at 1307; (Doc. 23, pp. 31–33; Doc. 47, pp. 30–32; Doc. 50, pp. 11–13; Doc. 56, pp. 10–13). Therefore, the Counter-Plaintiffs' trademark cancellation claim survives.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The First Motion to Strike (Doc. 32) is **GRANTED IN PART and DENIED IN PART** as set forth in the Order;

2. The First Motion to Dismiss (Doc. 33) **GRANTED IN PART and DENIED IN PART** as follows:

---

[9] Specifically, alleges that the Counter-Defendant's formal application papers were filed under oath pursuant to 18 U.S.C. § 1001 but contained several materially false statements therein regarding the Contested Mark, the date of its first use, the contested nature of its use, and so on. (Doc. 23, pp. 31–33; Doc. 47, pp. 30–32).

15

      a.     Counts I and II are **DISMISSED WITH PREJUDICE**;

      b.     The First Motion to Dismiss is otherwise denied;

3. The Second Motion to Strike (Doc. 57) is **GRANTED IN PART and DENIED IN PART** as set forth in the Order;

4. The Second Motion to Dismiss (Doc. 54) **GRANTED IN PART and DENIED IN PART** as follows:

      a.     Counts I and II are **DISMISSED WITH PREJUDICE**;

      b.     The Second Motion to Dismiss is otherwise denied;

5. Both Counter-Plaintiffs AI LLC and Christopher Allenger's Answer and Counterclaims (Doc. 23) and Counter-Plaintiff Parsons' Amended Answer and Counterclaims (Doc. 47) are hereby **STRICKEN**; and

6. On or before **July 25, 2023**, all three Counter-Plaintiffs may jointly refile one Second Amended Answer and Counterclaim.[10] Failure to timely refile consistent with the directives of this Order may result in dismissal of the counterclaims and an order barring the Counter-Plaintiffs from asserting the affirmative defenses without further notice.

**DONE AND ORDERED** in Orlando, Florida on July 11, 2023.

---

[10] The Court will no longer tolerate multiple almost identical iterations of the same filings on the docket. (*Compare* Doc. 23 *and* Doc. 47). Moving forward, the Counter-Plaintiffs are directed to jointly file such that Counter-Plaintiffs AI LLC, Allenger, and Parsons all file one document. Any differences between the Counter-Plaintiffs' cases and their counsel's treatment of the same can be set forth therein. This directive applies to all future briefing.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties